# UNITED STATE DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **JORGE CROSSWELL, GLORIA WANG, LA TRADE SUPPLIES, LLC, and GREEN WISDOM INDUSTRY, INC.** | § § § § | |
| ***Plaintiffs*** | § § | |
| **v.** | § § | |
| | § | **Civil Action No. __-cv-_____** |
| **JUAN CARLOS MARTINEZ CECIAS RODRIGUEZ; KARINA HERNANDEZ; CECILIA MIRANDA; JENNIFER GLEASON-ALTIERI; RHINOPRO CERAMICS, LLC; M&D CORPORATE SOLUTIONS, LLC; COMAR HOLINGS, LLC; MARA 6 HOLDINGS, LLC; MARA 6 INVESTMENTS, LLC; and RHINO LININGS CORPORATION** | § § § § § § § § § § § | |
| ***Defendants.*** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JORGE CROSSWELL, GLORIA WANG, LA TRADE SUPPLIES, LLC, and GREEN WISDOM INDUSTRY, LLC (hereinafter "Plaintiffs"), by and through their undersigned counsel, and file this *Original Complaint and Jury Demand* against Defendants JUAN CARLOS MARTINEZ CECIAS RODRIGUEZ; KARINA HERNANDEZ; CECILIA MIRANDA; JENNIFER GLEASON-ALTIERI; RHINOPRO CERAMICS, LLC; RHINOPRO TRUCK OUTFITTERS, INC.; M&D CORPORATE SOLUTIONS; COMAR HOLDINGS, LLC; MARA 6 HOLDINGS, LLC; MARA 6 INVESTMENTS, LLC; and RHINO LININGS CORPORATION:

# I.
# NATURE OF ACTION

1.      Defendants are engaged in immigration fraud. They market fraudulent "franchise" opportunities to foreign nationals who want to invest in the United States for the purposes of obtaining a E2 or EB5 visas as a path to eventual citizenship through naturalization. They used the postal service, email, telephonic communication, and banking wire services to carry out their scheme. They marketed their fake "investments for visas" scheme in Mexico, Taiwan, and Vietnam and, on information and belief, in other countries using Rhino Linings Corporation's trademarks, name, and goodwill—with the full knowledge and participation of Rhino Linings Corporation—to add non-existent legitimacy to their scheme. E2 and EB5 visas are subject to strict requirements under federal law. Two of these Defendants— Martinez and Hernandez—are already under indictment for their fraudulent actions in the United States District Court, Western District of Texas, San Antonio Division.[1] On information and belief, others—including Defendants in this case—are cooperating with the FBI and U.S. prosecutors in their ongoing investigation and prosecution of those two Defendants.

# II.
# PARTIES

2.      Plaintiff, Jorge Crosswell is a Mexican citizen who resides in Mexico.

3.      Plaintiff, Gloria Wang is a citizen of Taiwan who resides in Taiwan.

4.      Plaintiff, LA Trade Supplies, LLC is a domestic limited liability company with its principal place of business located at 3100 Wilcrest Drive, Suite 265-B, Houston, Texas, 77042.

---

[1] See Cause No. SA-21-CR-00533-FB, styled *United States of America v. Juan Carlos Martinez Cecias Rodriguez and Karina Hernandez*. Hernandez also faces indictment for similar fraudulent activities in the Western District of Texas, in Cause No. SA-21-CR-0154-FB, styled *United States of America v. Juan Enrique Kramer, Adrianna Pastor, Noel Olguin, and Karina Hernandez*.

5.      Plaintiff, Green Wisdom Industry, LLC is a domestic limited liability company with its principal place of business located at 5710 FM 1488 Rd., Magnolia, Texas 77354-2487.

6.      Defendant, Juan Carlos Martinez Cecias Rodriguez is an individual who resides in Harris County, Texas and may be served at his place of business, 1311 Price Plaza Drive, Katy, Texas 77449, or wherever he may be found.

7.      Defendant, Karina Hernandez is an individual with her place of residence in Bexar County, Texas. She may be served at her place of business, 4040 Broadway, Suite 525, San Antonio, Texas.

8.      Defendant, Cecilia Miranda is an individual who resides in Harris County, Texas and may be served at her place of residence, 1625 Main St., Apt. 2015, Houston, Texas 77002, or wherever she may be found.

9.      Defendant, RhinoPro Ceramic, LLC is a domestic limited liability company that may be served through its registered agent, Juan Carlos Martinez, at its principal place of business located at1311 Price Plaza Dr., Katy, Texas, 77449, or wherever he may be found. RhinoPro has forfeited is charter to do business in Texas.

10.     Defendant, RhinoPro Truck Outfitters, Inc. is a foreign corporation duly formed under the laws of the State of California, doing business in Texas, and may be served through its registered agent, Teddy Barzilai, at 2168 Balboa Ave, Suite 3, San Diego, CA 92109.

11.     Defendant M&D Corporate Solutions, LLC is a domestic limited liability company and may be served through its registered agent, Gino Demeneghi, at its principal place of business located at 1311 Price Plaza Dr., Katy, Texas, 77449, or wherever he may be found.

12.     Defendant, Comar Holdings, LLC is a domestic limited liability company that may be served through its registered agent, Juan Carlos Martinez, at its principal place of business

located at1311 Price Plaza Dr., Katy, Texas, 77449, or wherever he may be found. RhinoPro has forfeited is charter to do business in Texas.

13.     Defendant, Mara 6 Holdings, LLC is a domestic limited liability company that may be served through its registered agent, William Patrick Hedrick, at its principal place of business located at 2525 McCue Rd, Apt. 321, Houston, Texas 77056-5140, or wherever he may be found. RhinoPro has forfeited is charter to do business in Texas.

14.     Defendant, Mara 6 Investments, LLC is a domestic limited liability company that may be served through its registered agent, Juan Carlos Martinez, at its principal place of business located at1311 Price Plaza Dr., Katy, Texas, 77449, or wherever he may be found. RhinoPro has forfeited is charter to do business in Texas and may be served through its registered agent Sandra S. Roberts, 9747 Businesspark Blvd., San Diego, California 92131, or wherever she may be found. Long arm jurisdiction allegations are stated below.

15.     Defendant, Rhino Linings Corporation is a foreign corporation duly formed under the laws of California and registered to do business in Texas and may be served through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporated, 211 East 7th Street, Suite 620, Austin, Texas 78701.

16.     Defendant, Jennifer Gleason-Altieri ("Gleason") is an individual who resides in Harris County, Texas and may be served at her place of business at 1311 Price Plaza Drive, Suite 101, Katy, Texas 77449, or wherever she may be found.

17.     For clarity, Defendant, Juan Carlos Martinez Cecias Rodriguez shall be referred to as "Martinez." Defendant Karina Hernandez shall be referred to as "Hernandez." Defendant Cecilia Miranda shall be referred to as "Miranda." Defendant Jennifer Gleason-Altieri shall be referred to as "Gleason-Altieri." Defendant RhinoPro Ceramic, LLC shall be referred to "RPC."

Defendant RhinoPro Truck Outfitters, Inc., shall be referred to as "RPT Outfitters." Defendant M&D Corporate Solutions shall be referred to as "M&D" or "M&D Corporate Solutions." Comar Holdings, LLC shall be referred as "Comar," Mara 6 Holdings, LLC shall be referred to as "Mara 6 Holdings," and Mara 6 Investments, LLC shall be referred to as "Mara 6 Investments." Defendant Rhino Linings Corporation shall be referred to as "Rhino Linings." Additionally, two non-parties, Mobile Coating Management, LLC[2] and Uberwurx, LLC d/b/a RhinoPro Mobile, which has filed for bankruptcy,[3] shall be referred to as "MCM" and "Uberwurx," respectively.

### III.
### JURISDICTION & VENUE

18.     This Court has subject federal question jurisdiction under 28 U.S.C. § 1331. At least one civil cause of action arises under the Constitution, laws, or treaties of the United States, to wit, 18 U.S.C. § 1961 et seq (Racketeer Influenced Corrupt Organization Act). This Court has supplemental jurisdiction of Plaintiffs' state law claims under 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Defendants Martinez, Hernandez, Miranda, and Gleason-Altieri because they are residents of Texas or carried on their business in Texas. This Court has personal jurisdiction over Defendants RPC, M&D Corporate Solutions, Comar, Mara 6 Holdings, and Mara 6 Investments because they are domestic entities duly formed under the laws, of Texas, and their principal place of business in Texas. This Court has longarm jurisdiction over Defendant RPT Outfitters because, although it is a foreign corporation duly formed under California law, it has its principal business office in Texas, has multiple franchise locations in Texas, including six locations in the greater Houston metropolitan area, four locations

---

[2] Plaintiffs Crosswell, Wang, LA Trade Supplies, and Green Wisdom Industry will pursue separate claims against MCM in arbitration as provided for in their contracts.
[3] Uberwurx, LLC filed for Chapter 7 bankruptcy in the Southern District of Texas, Houston Division on February 10, 2022.

in the greater Dallas metropolitan area, and a location in San Marcos, Texas. RPT Outfitters conducts business in Texas and sells products and services in Texas through its franchises and authorized distributors.

20.     This Court also has longarm jurisdiction over Rhino Linings Corporation. Rhino Linings has registered as a foreign corporation to do business in Texas and has a registered agent in Texas. Rhino Linings has several company-owned or franchise owned stores located in Texas, including in Midland, Abilene, Austin, San Antonio, and Grand Prairie, Texas. Rhino Linings Corporation also sells products and services in the State of Texas and is closely affiliated—to the point of sharing the same business address—with another defendant in the lawsuit, Rhino Truck Outfitters, LLC, which likewise has multiple locations throughout Texas. Rhino Linings Corporation's trademarks and trade name are widely displayed throughout Texas at its store locations and in advertising, print media, visual, and electronic media.

21.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2).

## IV.

## FACTUAL BACKGROUND

22.     Defendants market fraudulent "franchise" opportunities to foreign nationals who want to invest in the United States for the purposes of obtaining an E2 or EB5 visa. Defendants Martinez, Hernandez, and others—such as Frontier Immigration—sold and conspired to sell fraudulent RhinoPro franchises to foreign investors, including Plaintiffs Jorge Crosswell and Gloria Wang. Martinez carried out his part of the scheme through at least five companies: Defendants RPC (RhinoPro Ceramic), RPT Outfitters (RhinoPro Truck Outfitters), Comar Holdings, and non-Defendants Uberwurx and MCM. Martinez orchestrated the scam from property owned by Comar Holdings; Uberwurx, MCM, and RPC as the instrumentalities through which the fraudulent scheme was executed.

23.     This scheme was not limited to investors in Mexico. It was also pitched to potential foreign investors in Taiwan and Vietnam and, on information and belief, in other countries. Furthermore, it was not a one-time occurrence. The scheme has been in operation for several years in various countries and has victimized dozens of investors. The scheme utilized the postal service to submit fraudulent visa applications and used email, telephone, and wire transmissions to communicate with investors and to transfer money from investors to Defendant companies.

**A.** **Uberwurx, RhinoPro Ceramic, and RhinoPro Truck Outfitters are interrelated companies; Rhino Linings is closely affiliated with them; Comar Holdings and Mara 6 Investments are owned by Martinez**

24.     Defendants, Comar Holdings, RPC, and RPT Outfitters, as well as non-defendants Uberwurx and MCM, are interrelated companies. Each identifies its principal business address to be 1311 Price Plaza Drive, Katy, Texas 77449. Uberwurx and RPC are limited liability companies; Martinez is the registered agent and apparent sole member. Comar Holdings and Mara 6 Investments also list their address as 1311 Price Plaza Drive and show that Martinez is the registered agent and a member of each.

25.     RPT Outfitters is a California corporation. Martinez is a director and on information and belief president. Uberwurx owns at least a 70% interest in the company. RPT Outfitter's website boasts locations in and around San Diego, California, Las Vegas, Nevada, and Phoenix, Arizona. It also boasts six locations in the Houston area, four locations in the Dallas area, and one location in San Marcos, Texas. RPT Outfitters' website identifies its Katy, Texas location as "Uberwurx, LLC." Like Uberwurx and RhinoPro Ceramic, RPT Outfitters also lists its principal business and mailing addresses as 1311 Price Plaza Drive, Katy, Texas 77449. Martinez and 1311 Price Plaza Drive are the common denominators that run through Uberwurx, RPC, and RPT Outfitters, and other Martinez-controlled companies.

26.     On its webpage, however, RPT Outfitters lists its contact address as 9747 Businesspark Ave, San Diego, CA 92131. This is also the address of Defendant Rhino Linings Corporation, which owns the following trademarks: (a) RhinoPro Truck Bodies, (b) RhinoPro Truck Outfitters, (c) RhinoPro Mobile, (d) RhinoPro, (e) RhinoPro HP-21, and (f) Rhino Home Pro. Uberwurx licenses the RhinoPro Mobile trademark to its victims. Significantly, Rhino Linings Corporation filed to register RhinoPro Mobile for trademark protection on September 11, 2017, only a month after Plaintiff Gloria Wang signed her contracts with Uberwurx. Rhino Linings Corporation knew that Defendants were using their trademarks, trade name, and goodwill to lend undeserved credibility to the scheme, and actively joined the scheme by permitting that use. On information and belief, Rhino Linings benefitted from the sale of lining products to the alleged franchises to lend the scheme outward credibility.

**B.  Martinez teamed up Frontier Immigration, Hernandez, and Others to sell fraudulent franchises under the RhinoPro name to foreign investors seeking EB2 or EB5 visas**

27.     Defendant, Martinez targeted foreign national investors who were looking to open a business in the United States. Martinez marketed himself, Uberwurx, and RhinoPro Mobile as providing a franchise mechanism for investors to gain visas for legal entry into the United States. Martinez advertised Uberwurx/RhinoPro in print, online, and marketed it at conferences. Rhino Linings knowingly and intentionally allowed Martinez to use its trademarks, trade name, and goodwill to lend credibility to his scheme. On information and belief, Rhino Linings received the proceeds for the sale of its lining products by Martinez and his coconspirators for the purpose of making the franchises appear to be legitimate, and Rhino Linings was aware of and permitted this deception.

28.     Non-defendant, Frontier Immigration is a company formed in Taiwan. Frontier Immigration targeted and marketed to foreign investors—in its case, Taiwanese nationals—who

were interested in starting businesses located in Texas. In return, Frontier Immigration received a commission. One of their victims was Plaintiff Gloria Wang, who attended a promotional seminar put on by Frontier Immigration in Taipei, Taiwan. At the event, she received an "Investment Opportunity" package touting RhinoPro Mobile.

29.     Defendant Hernandez is a citizen of Mexico with a visa to reside in the United States. She owned part of a business called Texas Franchise and Business Consulting (TBFC). Like Frontier Immigration, TBFC mainly targeted and marketed to foreign investors—in its case, Mexican nationals—who were interested in starting businesses located in Texas.[4] And like Frontier Immigration, TFBC was paid a commission.

30.     Martinez worked in conjunction with Hernandez, TFBC, Frontier Immigration, and others, including Defendants Miranda and Gleason-Altieri and M&D Corporate Solutions, and non-defendants Uberwurx and MCM, to help investors set up bank accounts and incorporate a limited liability company with which to 'run' and 'operate' their RhinoPro business. Together they worked to market and sell the RhinoPro Mobile investment. When dealing with Mexican investors, Martinez and Hernandez coordinated with Defendants Miranda, Gleason-Altieri, and M&D Corporate Solutions to prepare and file all necessary paperwork for investors to secure an E2 or EB5 visa from the United States Government. When dealing with Taiwanese investors, Martinez and Frontier Immigration coordinated with a Houston law firm, Foster LLP, and other unknown parties.[5]

31.     Execution of the scam required foreign investors—such as Crosswell and Wang—to execute two contracts—one with Uberwurx and one with MCM. Wang executed her contracts,

---

[4] TBFC's name was, at one point, changed to Texas FBC, LLC and then later to Invierte en Texas, LLC.
[5] Although Foster LLP has not yet been named as a Defendant in this action, Plaintiffs reserve the right to do so within the limits of the Federal Rules of Civil Procedure.

through her limited liability company, Green Wisdom Industry, LLC, on November 24, 2017.[6] Crosswell, through his limited liability company, LA Trade Supplies, executed his contracts on May 6, 2019.[7]

32.     Per these contracts, investors such as Crosswell and Wang (through their limited liability companies LA Trade Supplies and Green Wisdom Industry) paid a fixed sum to Uberwurx, which would provide each investor with a license—not a franchise as initially represented to them—to use RhinoPro products. The license agreement also granted the investors the right to use the RhinoPro Mobile trademark and tradename. Rhino Linings was fully aware that Martinez, Hernandez, Uberwurx, RPC, and RPT Outfitters were using the Rhino trademarks in this manner. Rhino Linings knowingly and intentionally allowed Defendants to use their marks in their immigration fraud scheme.

33.     Martinez, Hernandez, Uberwurx, RPC, RPT Outfitters, and Frontier Immigration used a general licensing structure to circumvent federal franchising requirements—including the preparation of a Franchise Disclosure Statement ("FDD"). The use of licensing agreements as opposed to franchising agreements is one of the hallmarks of franchising fraud. This comes as no surprise as FDDs require extensive and comprehensive disclosure of detailed information, which many shady promotors do not want to provide (for obvious reasons).[8] The federal FDD requirement includes the disclosure of past and pending lawsuits. Uberwurx currently has or has had four lawsuits against it in Harris County alone since 2016; Martinez also has a history of lawsuits. Although Martinez, Hernandez, Uberwurx, RPC, RPT Outfitters, Frontier Immigration, and others told investors they were buying franchises, in fact investors were purchasing licenses.

---

[6] Exhibits 1 and 2, adopted by reference. FED. R. CIV. P. 10(c).
[7] Exhibits 3 and 4, adopted by reference. FED. R. CIV. P. 10(c).
[8] See S.E.C. Franchise Rule, 16 CFR Parts 436 and 437.

34. RhinoPro Mobile products allegedly included a truck accessory store and a van that sells spray on truck and trailer bedliners. Each investor is supposed to receive their own RhinoPro Mobile van, each emblazoned in Rhino Linings' trademarks and trade name. The van was to include the equipment needed to spray bedliners into trucks. The liquid ceramic liners were Rhino Linings products that were supposed to offer protection for vehicles to which they were applied. The liner would be applied by first enclosing the truck or trailer in an inflatable enclosure where the liner could be safely applied without affecting the outside environment. A RhinoPro Mobile van was fully equipped to provide services on location as opposed to bringing the subject truck or trailer to a central location. The liquid liner was manufactured and sold by Rhino Linings Corporation. On information and belief, Rhino Linings knowing about the fraud, nonetheless profited from the sale of its lining products by Defendants in their effort to clothe the franchises with an air of legitimacy.

35. Frontier Immigration, Martinez, Uberwurx, and others specifically pitched the RhinoPro Mobile as a program for foreign nationals to obtain visas for permanent residency and eventually citizenship in the United States. For example, in the investment opportunity brochure circulated by Frontier Immigration in Taiwan specifically stated that investors would receive 100% of the profits from their business. A similar brochure provided Crosswell made the same claim. This was a false statement, however, as the Management and Administrative Agreement with MCM limited Plaintiffs' profits to a specific amount per month, more fully discussed below, with the remainder going to MCM as its 'management fee.'

**C.** **Execution of the Scam as to Plaintiff Gloria Wang**

36. Martinez and Frontier Immigration used Uberwurx d/b/a RhinoPro Mobile, RPC, RPT Outfitters, and MCM to further their unlawful activities and defraud investors, including

Gloria Wang and Green Wisdom Industry. Members and/or employees of these companies participated in and/or facilitated these Defendants' unlawful activities and fraud.

37.     Martinez and Frontier Immigration convinced Wang to form Green Wisdom Industry, LLC, and purchase three (3) RhinoPro Mobile vans for $ 170,000 per unit plus $20,000 for operating expenses. The License Agreement limited Green Wisdom Industry's territory to the city limits of Beaumont, Texas.

38.     Wang formed Green Wisdom Industry on or about November 6, 2017, at the urging of Martinez and Frontier Immigration and others, for the purpose of managing the RhinoPro Mobile franchises. Wang executed her Licensing Agreement and Management and Administration Services Agreement on or about November 24, 2017. Wang's Uberwurx contract stated that she was purchasing three (3) RhinoPro vans for a total of $530,000.[9] Wang's Uberwurx contract also acknowledged her status as an "EB5 investor" in its termination provisions. It provided for an initial term of 5-years "but not prior to the EB5 investor's filing of the I-829 Petition."[10] An I-829 Petition allows conditional permanent residents who obtained that status through a qualifying investment to remove that condition on their resident status.[11]

39.     More onerous was the Management and Administrative Services Agreement between MCM, Wang, and Wang's Green Wisdom Industry company.  Although the Management and Administrative Services Agreement states that the Manager shall perform such services as the "Company" (Green Wisdom Industry) may from time to time specify, in fact, the agreement effectively turned total control of Wang's RhinoPro Mobile business over to MCM.[12] In return, MCM (defined in the agreement as the "Manager") received as compensation all net profits

---

[9] Exhibit 1 (sec. 4.1).
[10] Exhibit 1 (secs. 2.1, 2.2).
[11] *Id*.
[12] Exhibit 2 (sec. 3).

exceeding the first $4,375 USD in net profits earned by Green Wisdom.[13] Stated differently, the investor could earn only a maximum of $4,375 USD monthly, or $52,500 per year. Thus, under the terms of the Management and Administrative Services Agreement, the investor could never earn more than $52,500 per year. This was the promised "return on investment."

40.     Because Ms. Wang did not have an E2 visa, she had to rely on MCM to manage the business. MCM paid Ms. Wang returns per the management contract starting April 20, 2018. MCM continued making such payments until April of 2020. Then payments stopped, allegedly due to Covid-19. Repeated promises to resume payments were broken and on November 26, 2021, Martinez demanded a $50,000 in additional capital to continue operations or MCM would cease managing the business. By this time, on information and belief, Martinez's scheme was beginning to unravel under the pressure of mounting complaints, the effect of Covid-19 on the economy, and a lack of new investors with which to pay old investors as part of a Ponzi plan.[14]

41.     When Foster Law, on behalf of Ms. Wang, scheduled her visa interview appointment with Taipei's Immigrant Visa Office for August 20, 2020, she still believed that her investment was being responsibly applied by Defendants pursuant to the contracts they entered with Ms. Wang and Green Wisdom.

**D.  <u>Execution of the Scam as to Plaintiff Jorge Crosswell</u>**

42.     Martinez, Hernandez, Miranda, Uberwurx, RPC, RPT Outfitters, MCM, and M&D

---

[13] Exhibit 21 (sec. 6).

[14] Furthermore, once Wang executed the above-described contracts and paid her Initial Turn-Key Operation Fee on or about November 24, 2017, she had a reasonable expectation that Uberwurx and MCM were thereafter in the process of fulfilling their contractual obligations to her. No reasonable investor could expect that obtaining a premises for housing the vans and equipment, applying the Rhino Linings trademarks and decals to the vans, transferring the vans and equipment to the premises, hiring a Designated Manager, establishing the business' bank accounts, hiring staff, and obtaining customers would happen overnight. A minimum of six months would be required to purchases the vans, outfit them, hire and train van operators, and establish the business. It is uncertain, however, whether any of these steps were undertaken.

Corporate Solutions, convinced Crosswell to form Plaintiff LA Trade Supplies, LLC and to purchase three fully equipped RhinoPro Mobile vans for approximately $150,000 each, with an additional $50,000 to cover startup costs. The License Agreement limited LA Trade Supplies' territory to the city limits of Katy, Texas, although the business plan prepared by Defendants stated the business would be providing services in the western Houston area—a significantly larger area than Katy itself.

43.     Martinez, Hernandez, and Miranda used Uberwurx d/b/a RhinoPro Mobile, RPC, RPT Outfitters, MCM, and M&D Corporate Solutions, to further their unlawful activities and defraud investors, including Jorge Crosswell and LA Trade Supplies, LLC. Members and/or employees of these companies participated in and/or facilitated these Defendants' unlawful activities and fraud.

44.     On March 19, 2019, Hernandez informed Crosswell by email that he should sign the RhinoPro contracts soon, so that he would not lose out on the opportunity to invest as part of the group of investors in the RhinoPro franchises. She represented that the franchises that would provide a return of 11% annually. This is belied by the management contract, which limits Crosswell's return to a maximum of $3,062.50 a month, for a total of $36,750 a year. It is difficult to see how an annual return of $36,750 on a $525,000 investment equals an 11% return.

45.     Croswell formed Plaintiff LA Trade Supplies, LLC on or about April 1, 2019, to manage and operate the franchises. Martinez had LA Trade Supplies sign a management agreement with MCM. Crosswell and LA Trade Supplies signed the Uberwurx License Agreement ("License Agreement") on May 6, 2019.[15] Martinez also convinced Crosswell to sign the MCM Management and Administrative Services Agreement ("Management Agreement") on July 19,

---

[15] Exhibit 3.

2019.[16] Per the License Agreement, Crosswell/LA Trade Supplies paid Uberwurx $25,000 on or about April 4, 2019, $150,000 on or about May 7, 2019, and $350,000 on or about July 19, 2019, for a total payout of $525,000.

46.     As with the Wang contract, the fee paid to MCM allegedly included the management of Crosswell's business, including all day-to-day operations, payroll, and billing, by MCM. In fact, Crosswell received less than Wang under his management contract—only $3,062.50 per month of net profits.[17] Nor did Martinez disclose—to either Wang or Crosswell—that MCM is a company owned entirely by him.

### E.   Defendants' Fraudulent Immigration Scheme Precluded Investors from Managing Their Own Companies; It Also Created Marginal Businesses Incapable of Sustaining Themselves

47.     Martinez did not disclose to investors that under the contracts they would be unable to manage their businesses themselves, as required for an E2 visa.[18] MCM allegedly hired and trained the employees to run each investor's van and managed the operations and jobs worked by each investor's van. LA Trade Supplies and Green Wisdom Industry were required to use MCM to manage their businesses, even though Crosswell wanted to run the business himself to qualify for the E2 visa. The business model, however, precluded investors from running their own businesses. Stated differently, Defendants' scheme created companies where each investor was not involved, actively or otherwise, with their own company. But, at least as to Crosswell, Defendants structured the transaction so that in the visa application documentation it appeared the foreign investors were running substantial businesses when, in fact, they were not. These

---

[16] Exhibit 4.
[17] Exhibit 4, pg. 6.
[18] An E2 visa is a temporary work visa that allows a foreign national to immediately enter the United States for purposes of working and is often used while a more permanent EB5 visa application is pending. The E2 visa requires the foreign national to be involved in the day-to-day operations of the business.

companies were marginal enterprises that did not have the present or future capacity to generate more than enough income to provide a minimal living for the investor and his/ her family. Thus, the whole reason for investing in the RhinoPro Mobile franchises—to operate a business that would qualify the investor for an E2 or EB5 visa—was frustrated by the business model Martinez and his coconspirators sold Crosswell and LA Trade Supplies (and Wang and Green Wisdom Industry).

48.     This investor scheme yielded RhinoPro franchises that were rarely, if ever, profitable. Contracted payments to investors, when and if they were made, were often funded through new investment fees—a classic pyramid scheme. In fact, Defendants failed to make many guaranteed payments to LA Trade Supplies and stopped making payments to Green Wisdom Industry. Also, although Defendants contracted to provide each investor with their own van and their own territory, this did not often occur. RhinoPro's inventory of vans was significantly less than its number of investors. LA Trade Supplies never received the promised vans or supplies.

49.     Despite these shortcomings, Martinez, Hernandez, Uberwurx, RPC, and RPT Outfitters marketed the Uberwurx/RhinoPro investment as being one hundred percent effective at receiving E2 and EB5 visa approval. In fact, the investment scheme defrauded not only investors—including Plaintiffs—but also the United States Government.

**F.  Defendants Miranda, Gleason-Altieri, and M&D Corporate Solutions Prepared Bogus Business Plans and Fraudulent Visa Application in Furtherance of the Scam**

50.     Martinez, Hernandez, Uberwurx, RPC, and RPT Outfitters had Crosswell and LA Trade Supplies engage the services of Defendants Cecilia Miranda and M&D Corporate Solutions, LLC to assist Crosswell with the visa process.[19] Crosswell also signed a Services Consulting Agreement ("Consulting Agreement") with M&D Corporate Solutions on or about August 6, 2019.

---

[19] Wang and Green Wisdom Industry engaged the services of Foster Law in Houston.

Crosswell paid $20,000 for preparation of an EB5 visa application and $4,000 for the preparation of a business plan for his RhinoPro franchises. Defendants Miranda and M&D Corporate Solutions then had Crosswell and LA Trade Supplies engage the services of Jennifer Gleason-Altieri, an attorney licensed in Puerto Rico but practicing immigration law in Katy, Texas, to assist in preparing the visa application. Defendant Gleason-Altieri is not licensed to practice law in Texas.

51.     Miranda and M&D Corporate Solutions prepared a sham business plan for Crosswell's and LA Trade Supplies' RhinoPro franchise. These Defendants also prepared fraudulent visa applications; Defendant Gleason-Altieri rubber stamped them. Defendant Gleason-Altieri processed the applications and signed off on them without determining whether they were valid or not fraudulent. Furthermore, on the instruction of Martinez, Gleason-Altieri removed the MCM Management Agreement from the E2 file because its presence, if seen by the examining officer, would have resulted in the visa being denied.

52.     Visa applications were sent to the USCUS through the U.S. mail. Communications with Plaintiffs, and the transfer of funds from Plaintiffs to Defendants, occurred through email, text messages, and wire transfers.

**V.**

**CAUSES OF ACTION**

**COUNT 1: <u>RICO Violation (all Defendants)</u>**

53.     Plaintiffs adopt by reference the forgoing paragraphs. FED. R. CIV. P. 10(c).

54.     Defendants' actions violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961 et seq. Defendants conducted an enterprise through a pattern of racketeering activity. Specifically, Defendants Martinez, Hernandez, Miranda, Gleason-Altieri, Uberwurx, RhinoPro Ceramic, RhinoPro Truck Outfitters, and M&D Corporate Solutions, along with non-defendants Uberwurx, Frontier Immigration, and MCM, conducted an enterprise aimed

at obtaining fraudulent visas for purposes of eventually obtaining citizenship. In the process of conducting that enterprise, they committed mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and immigration fraud (18 U.S.C. § 1425), which are defined as racketeering activity under RICO. Defendant Hernandez and non-defendants TBFC and Frontier Immigration located suitable victims, Defendants Martinez, RPC, and RPT Outfitters and non-defendant Uberwurx sold them fraudulent RhinoPro franchises, Defendant Martinez and non-defendant MCM sold them fraudulent management services, Defendants Miranda, Gleason-Altieri, and M&D Corporate Solutions prepared fraudulent business plans and visa paperwork and submitted it to the Department of U.S. Citizenship and Immigration Services ("USCIS").

55.     The purpose of the RhinoPro Mobile franchises was to provide an apparently valid and existing business to investors with the objective of their obtaining an E2 or EB5 visa and put the investor on the path to citizenship through naturalization. Martinez, Uberwurx, RPC, and RPT Outfitters provided the apparently valid business enterprise, MCM managed the enterprise, and Miranda, Gleason-Altieri, and M&D Corporate Solutions provided the business plan and visa applications for Crosswell, while Foster Law provided the visa application for Wang. Each received money for performing these tasks as part of the overall enterprise.

56.     Furthermore, Plaintiffs have standing to bring this RICO cause of action. A direct relationship exists between Plaintiffs' injuries and the injurious conduct alleged. Defendants' immigration fraud directly resulted in the loss of at least $549,000 to Plaintiffs Crosswell and LA Trade Supplies, and at least $500,000 to Wang and Green Wisdom Industry—monies paid to Defendants for the purchase of the RhinoPro franchises and Defendants' services. Furthermore, Plaintiffs' injuries were proximately caused by Defendants' conduct. The harm was foreseeable and a direct result of Defendants' actions.

**COUNT 2:** **Breach of Contract (M&D Business Solutions)**

57.     Plaintiffs adopt by reference the forgoing paragraphs. FED. R. CIV. P. 10(c). Plaintiffs Crosswell and LA Trade Supplies had a valid, enforceable contract with M&D Corporate Solutions—the Consulting Agreement. Plaintiffs are the proper party to sue for breach of contract because they signed the contracts. Plaintiffs performed under the contracts, paying M&D Corporate Solutions at least $24,000. Defendants breached the contracts by delivering a sham business plan and fraudulent visa application. Defendants' failure to perform under the contract caused Plaintiffs damages in the amount of at least $24,000.

**COUNTS 3 and 4:** **Common Law Fraud and Fraud in the Inducement (Martinez, Hernandez, RPC, and RPT Outfitters)**

58.     Plaintiffs adopt by reference the forgoing paragraphs. FED. R. CIV. P. 10(c).

59.     Defendants Martinez, Hernandez, RPC, RPT Outfitters, and non-defendant MCM made representations to Wang, Crosswell, Green Wisdom Industry, and LA Trade Supplies, LLC. Martinez, Frontier Immigration, RPC, and RPT Outfitters, represented that Wang/Green Wisdom Industry were purchasing three (3) RhinoPro Mobile franchises, and that this would allow her to obtain an EB5 visa. Martinez, Hernandez, RPC, and RPT Outfitters, represented that Crosswell/LA Trade Supplies were purchasing three (3) RhinoPro Mobile franchises, and that this would allow him to obtain an E2 and EB5 visa. Defendants also represented to all Plaintiffs that each RhinoPro Mobile franchise would come with a truck accessories store and a fully equipped van. They also represented that each franchise would be profitable and would yield a guaranteed return of 11%. They further represented that MCM would perform management services. They also made other representations. The representations were material. The representations were also false. When they made the representations, Defendants knew the representations were false or made the statements recklessly, as a positive assertion, and without knowledge of their truth. Defendants made the

representations intending that the Plaintiffs would act on the representation by buying RhinoPro Mobile franchises. Plaintiffs did in fact act upon those false representations and, as a result, caused Crosswell/LA Trade Supplies damages in an amount of at least $549,000 and Wang/Green Wisdom Industry damages of at least $530,000.

**COUNTS 5 and 6: Common Law Fraud and Fraud in the Inducement (Miranda, Gleason-Altieri and M&D Corporate Solutions)**

60.    Plaintiffs adopt by reference the forgoing paragraphs. Fed. R. Civ. P. 10(c).

61.    Defendants Miranda, Gleason-Altieri, and M&D Corporate Solutions made representations to Crosswell and LA Trade Supplies, LLC. The purpose of making the statements was to induce Crosswell/LA Trade Supplies into retaining them to form LA Trade Supplies and prepare Crosswell's E2 and EB5 visa applications. These Defendants represented to Crosswell and LA Trade Supplies, LLC that the visa applications would be completed pursuant to, and comply with, U.S. immigration laws. They also made other representations. The representations were material. The representations were also false. When they made the representations, Defendants Miranda, Gleason-Altieri, and M&D Corporate Solutions knew the representations were false or made the statements recklessly, as a positive assertion, and without knowledge of their truth. These Defendants made the representations with the intent that Crosswell/LA Trade Supplies act on them by buying RhinoPro Mobile franchises and hiring these Defendants to form LA Trade Supplies and prepare the visa application paperwork. Crosswell/LA Trade Supplies did in fact act upon those false representations and, as a result, caused Crosswell/LA Trade Supplies damages in an amount of at least $530,000.

**COUNT 7: Defendants Engaged in deceptive trade practices as defined by the Texas Deceptive Trade Practices Act (Martinez, Hernandez. RPC, RPT Outfiters)**

62.    Plaintiffs adopt by reference the forgoing paragraphs. Fed. R. Civ. P. 10(c).

63.    Plaintiffs Crosswell and LA Trade Supplies Ware consumers within the meaning

of the Texas Deceptive Trade Practices Act. Defendants Martinez, Hernandez, RPC, and RPT Outfitters engaged in deceptive trade practices by representing certain goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do have, or that a person has a sponsorship, approval, status, affiliation, or connection which he does not. TEX. BUS. & COM. CODE ANN. § 17.46(b)(5). These Defendants engaged in further deceptive trade practices by representing certain goods or services were of a particular standard, quality, or grade, when they were of another. TEX. BUS. & COM. CODE ANN. § 17.46(b)(7). These Defendants also engaged in deceptive trade practices by advertising goods or services without intending to sell them as advertised. TEX. BUS. & COM. CODE ANN. § 17.46(b)(9). Defendants engaged in deceptive trade practices knowingly and intentionally.

64.     Defendants Martinez, Hernandez, RPC, and RPT Outfitters represented that Wang/Green Wisdom Industry and Crosswell/LA Trade Supplies were purchasing three RhinoPro Mobile franchises, and that this would allow Wang to obtain an EB5 visa and Crosswell to obtain E2 and EB5 visas. They also represented that each RhinoPro Mobile franchise would come with a truck accessories store and a fully equipped van. They also represented that each franchise would be profitable and would yield a guaranteed return. They represented that MCM would manage the franchises without disclosing that Crosswell would have no management role in the franchises, which violated U.S. immigration law as it relates to E2 visas. These Defendants also made other representations. These representatives were deceptive under DTPA sections 17.46(b)(5), (b)(7), and (b)(9). As a result of Defendants Martinez, Hernandez, RPC, and RPT Outfitters engaging in these deceptive trade practices, Crosswell and LA Trade Supplies suffered damages.

**COUNT 8: <u>Defendants Engaged in deceptive trade practices as defined by the Texas Deceptive Trade Practices Act (Miranda and M&D)</u>**

65.     Plaintiffs adopt by reference the forgoing paragraphs. FED. R. CIV. P. 10(c).

66.     Plaintiffs Crosswell and LA Trade Supplies are consumers within the meaning of the Texas Deceptive Trade Practices Act. Defendants Miranda and M&D Corporate Solutions engaged in deceptive trade practices by representing certain goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do have, or that a person has a sponsorship, approval, status, affiliation, or connection which he does not. TEX. BUS. & COM. CODE ANN. § 17.46(b)(5). These Defendants engaged in further deceptive trade practices by representing certain goods or services were of a particular standard, quality, or grade, when they were of another. TEX. BUS. & COM. CODE ANN. § 17.46(b)(7). These Defendants also engaged in deceptive trade practices by advertising goods or services without intending to sell them as advertised. TEX. BUS. & COM. CODE ANN. § 17.46(b)(9). Defendants engaged in deceptive trade practices knowingly and intentionally.

67.     Defendants Miranda and M&D Corporate Solutions represented that they would prepare and file Croswell's E2 and EB5 visa applications that would comply with federal law and prepare a valid and workable business plan for his RhinoPro franchises. They failed to disclose that MCM's management role would foreclose his E2 visa applications because use of a management company to oversee all operations of the RhinoPro franchises violated U.S. immigration law as it relates to E2 visas. These Defendants omitted the MCM management contract from the E2 visa application, knowing that if it were included the application would not be approved. These Defendants obtained Crosswell's E2 visa by fraud, subjecting Crosswell to revocation of the visa. These Defendants also made other representations. These representations were deceptive under sections 17.46(b)(5), (b)(7), and (b)(9). As a result of Defendants Miranda and M&D Corporate Solutions engaging in these deceptive trade practices, Crosswell and LA Trade Supplies suffered damages.

**COUNT 9: <u>Legal Malpractice (as to Gleason-Altieri only)</u>**

68.    Plaintiffs adopt by reference the forgoing paragraphs. FED. R. CIV. P. 10(c).

69.    Defendant Altieri-Gleason owed a duty to Plaintiff Crosswell. Her negligent acts or omissions, including removing a vital document from Crosswell's EB5 application, breached that duty. Furthermore, breach of the duty proximately caused Crosswell damages. The injury was both foreseeable and a direct result of Gleason-Altieri's breach of her duty to Crosswell. As a result of the breach, Crosswell suffered damages. Crosswell has received an E2 visa subject to being revoked and exposing him to liability.

**COUNT 10: <u>Fraudulent Transfer</u>**

70.    Plaintiffs adopt by reference the forgoing paragraphs. FED. R. CIV. P. 10(c).

71.    Defendant Martinez is a debtor within the meaning of the Texas Uniform Fraudulent Transfer Act. TEX. BUS. & COM. CODE ANN. § 24.002(6). Plaintiffs are creditors who have claims against the debtor within the meaning of the Texas Uniform Fraudulent Transfer Act. TEX. BUS. & COM. CODE ANN. § 24.002(3), (4). Defendants RPC, RPT Outfitters, Comar Holdings, Mara 6 Investments, and Mara 6 Holdings, are insiders within the meaning of the Texas Uniform Fraudulent Transfer Act. TEX. BUS. & COM. CODE ANN. § 24.002(7). On information and belief, Defendant Martinez fraudulently transferred money, property, and other assets to Defendants RPC, RPT Outfitters, Comar Holdings, Mara 6 Investments, and Mara 6 Holdings for the purpose of hindering, delaying, or defrauding Plaintiff creditors. TEX. BUS. & COM. CODE ANN. § 24.005(a)(1). Defendant Martinez also transferred money, property, and other assets to Defendants RPC, RPT Outfitters, Comar Holdings, Mara 6 Investments, and Mara 6 Holdings without receiving equivalent value in exchange for the transfer, and was engaged or was about the be engaged in a transaction for which his remaining assets were unreasonable small in relation to the transaction, or intended to incur, or believed or reasonably should have believed, that he would

incur debt beyond his ability to pay as the debt became due. TEX. BUS. & COM. CODE ANN. § 24.005(a)(2). Alternatively, Defendant Martinez transferred money, property, and other assets to Defendants RPC, RPT Outfitters, Comar Holdings, Mara 6 Investments, and Mara 6 Holdings without receiving reasonably equivalent value in exchange for the transfer and he was insolvent at the time of the transfer or became insolvent because of the transfer. TEX. BUS. & COM. CODE ANN. § 24.006(a). Alternatively, Defendant Martinez transferred money, property, and assets to insider Defendants RPC, RPT Outfitters, Comar Holdings, Mara 6 Investments, and Mara 6 Holdings for an antecedent debt; Martinez was insolvent at the time of the transfer and insider Defendants had reason to believe that Martinez was insolvent at the time of the transfer. TEX. BUS. & COM. CODE ANN. § 24.006(b).

## COUNT 11: Alter Ego

72.     Plaintiffs adopt by reference the forgoing paragraphs. FED. R. CIV. P. 10(c).

73.     Defendants Martinez, RPC, RPT Outfitters, Comar Holdings, Mara 6 Investments, and Mara 6 Holdings, are all alter egos of Defendant Martinez. Defendant Martinez used Defendants RPC, RPT Outfitters, Comar Holdings, Mara 6 Investments, and Mara 6 Holdings, to perpetuate a fraud, as described in the preceding paragraphs of this Complaint.

## COUNT 12: Conspiracy

74.     Plaintiffs adopt by reference the forgoing paragraphs. FED. R. CIV. P. 10(c).

75.     Defendants Martinez, RPC, RPT Outfitters, and Rhino Linings along with non-defendants Frontier Immigration, Uberwurx, MCM and others comprised a combination of two or more persons that included Uberwurx. The object of their combination was to achieve an unlawful purpose or a lawful purpose by unlawful means—to wit, engaging in immigration fraud. The members of this conspiracy had a meeting of the minds on the object or course of action. That meeting including a plan to sell phantom franchises and using the franchises to assemble a

fraudulent E2 or EB5 visa application for the purpose of obtaining a visa for the client. One or more members of the conspiracy committed an unlawful, overt act to further the object or course of action. Defendant Martinez and non-defendants Uberwurx and Frontier Immigration sold the phantom franchises, Defendants RPC and RPT Outfitters, along with non-defendant Uberwurx, provided the equipment and trademarks to make the franchises appear to be real, and Defendant MCM 'managed' the phantom franchises. Defendant Rhino Linings participated in the conspiracy by allowing the other Defendants to use its trademarks and accepting sales of liner products used to lend an air of legitimacy to the franchises. As a result of Defendants' actions, Plaintiffs Wang and Green Wisdom Industry suffered damages.

76.     Defendants Martinez, Hernandez, Miranda, Gleason-Altieri, RPC, RPT Outfitters, and Rhino Linings comprised a combination of two or more persons that included non-defendants Uberwurx and MCM. The object of their combination was to achieve an unlawful purpose or a lawful purpose by unlawful means—to wit, engaging in immigration fraud. The members of this conspiracy had a meeting of the minds on the object or course of action. That meeting including a plan to sell phantom franchises and using the franchises to assemble a fraudulent E2 or EB5 visa application for the purpose of obtaining a visa for the client. One or more members of the conspiracy committed an unlawful, overt act to further the object or course of action. Defendants Martinez and Hernandez sold the phantom franchises, Defendants RPC, and RPT Outfitters, along with non-defendant Uberwurx, sold the phantom franchises, Defendant MCM managed the phantom franchises, and Defendants Miranda, Gleason-Altieri, and M&D prepared the fraudulent business plan and visa applications. Defendant Rhino Linings participated in the conspiracy by allowing the other Defendants to use its trademarks and accepting sales of liner products used to lend an air of legitimacy to the franchises. As a result of Defendants' actions, Plaintiffs Crosswell

and LA Trade Supplies suffered damages.

## VI.

### DAMAGES & ATTORNEYS' FEES

77.     Plaintiffs adopt by reference the forgoing paragraphs. FED. R. CIV. P. 10(c).

78.     Plaintiff seeks to recover his actual and consequential damages in this suit, in an amount within the jurisdictional limits of this Court. Plaintiff seeks exemplary damages against Defendants as Defendants' actions were committed with malice per Chapter 41 of the Texas Civil Practice & Remedies Code. Plaintiffs seek treble damages pursuant to TEX. BUS. & COM. CODE. ANN. § 17.50. Plaintiffs also seek treble damages pursuant to 18 U.S.C. § 1964(c).

79.     As a result of Defendants' conduct, Plaintiffs were forced to retain the undersigned counsel to pursue these causes of action. Plaintiff seeks to recover their reasonable attorneys' fees and costs, along with pre-judgment and post-judgment interest, under the provisions of Chapter 38 of the Texas Civil Practice & Remedies Code, Section 17.50 of the Texas Deceptive Trade Practices Act, and 18 U.S.C. § 1964(c), or as otherwise allowed by law.

## VII.

### JURY DEMAND

80.     Plaintiff respectfully demands the right to have a trial by jury and hereby tenders the appropriate jury fee.

## VIII.

### PRAYER

81.     For these reasons, Plaintiffs ask the Court issue citation for Defendants to appear and answer, and that Plaintiffs be awarded judgment against Defendants for the following:

(a)     Actual, consequential, and exemplary damages, as allowed by law;

(b)     Pre-judgment and post-judgment interest, as allowed by law;

(c)     Treble damages;

(d)     Exemplary damages;

(e)     Reasonable and necessary attorney's fees and costs of court;

(f)     All other relief to which Plaintiff may show himself entitled, in law or in equity.

Respectfully submitted,

SERNA VETHAN, PLLC

By:  /s/ Charles Vethan
        Charles M.R. Vethan
        Texas Bar No. 00791852
        Email: cvethan@vethanlaw.com
        Daniel E. Serna
        Texas Bar No. 24046821
        Email: dserna@vethanlaw.com
        Joseph L. Lanza
        Texas Bar No. 00784447
        Email: jlanza@vethanlaw.com
        Jens K. Sandberg
        Texas Bar No. 24105252
        Email: jsandberg@vethanlaw.com
        8200 IH 10 West, Suite 320
        San Antonio, Texas 78230
        Telephone: (210) 824-2220
        Facsimile: (713) 526-2230
        Service email: edocs@vwtexlaw.com

***Attorneys for Plaintiffs***