Case 4:22-cv-01105 Document 34 Filed on 09/08/23 in TXSD Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
September 08, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JORGE CROSSWELL, *et al.*, § § Plaintiffs. § § v. § § JUAN CARLOS MARTINEZ CECIAS § RODRIGUEZ, *et al.*, § § Defendants. § | CIVIL ACTION NO. 4:22-cv-01105 |

## MEMORANDUM AND RECOMMENDATION

Pending before me are four motions to dismiss: (1) Rhinopro Ceramics, LLC, Mara 6 Holdings, LLC, and Mara 6 Investments, LLC's Motion to Dismiss for Failure to State a Claim (Dkt. 19); (2) Juan Carlos Martinez Cecias Rodriguez's Motion to Dismiss for Failure to State a Claim (Dkt. 20); (3) Comar Holdings, LLC's Motion to Dismiss for Failure to State a Claim (Dkt. 21); and (4) Cecilia Miranda's Motion to Dismiss for Failure to State a Claim (Dkt. 26). Having reviewed Plaintiffs' live pleading, the motions to dismiss, the responses to the motions to dismiss, and the applicable law, I recommend that the motions to dismiss be **GRANTED**.[1]

---

[1] Judge Dena Palermo recently issued a well-reasoned and thorough opinion, recommending that motions to dismiss be granted in a related case. *See Bustos v. Invierte en Texas*, No. 4:22-CV-02690, 2023 WL 5487672 (S.D. Tex. Aug. 9, 2023). In *Bustos*, the plaintiffs, represented by the same lawyers involved in this case, sued the same defendants as in this case for the same underlying conduct. The pleadings filed in both cases—the complaints, the motions to dismiss, and the responses to those motions to dismiss—are virtually identical. Practically the only difference in the pleadings is that the plaintiffs' names are different in each case. Because there is no need to recreate the wheel, I will borrow heavily from Judge Palermo's Memorandum and Recommendation. As the old saying goes, imitation is the sincerest form of flattery.

## BACKGROUND

Plaintiff Jorge Crosswell ("Crosswell") is a citizen of Mexico. Plaintiff Gloria Wang ("Wang") is a citizen of Taiwan. Plaintiffs LA Trade Supplies, LLC ("LA Trade") and Green Wisdom Industry, LLC ("Green Wisdom") are both Texas limited liability companies.

In total, there are 11 defendants. One defendant—Rhino Linings Corporation ("Rhino Linings")—has filed an answer. *See* Dkt. 9. Six defendants have appeared in this case and filed motions to dismiss. They are: (1) Rhinopro Ceramics, LLC ("RPC"); (2) Mara 6 Holdings, LLC; (3) Mara 6 Investments, LLC; (4) Juan Carlos Martinez Cecias Rodriguez ("Martinez"); (5) Comar Holdings, LLC; and (6) Cecilia Miranda ("Miranda"). Four defendants have not made an appearance in the case: (1) Karina Hernandez ("Hernandez"); (2) RhinoPro Truck Outfitters, Inc. ("RPT Outfitters"); (3) M&D Corporate Solutions, LLC ("M&D"); and (4) Jennifer Anne Gleason-Altieri ("Gleason-Altieri").

Plaintiffs claim that Defendants marketed fraudulent RhinoPro "franchise" opportunities to foreign nationals who wanted to invest in the United States, many for the purpose of obtaining visas for permanent residency and eventually towards American citizenship. Dkt. 1 at 6. Plaintiffs further allege that this scheme was carried out over several years, using at least five interrelated companies, marketing to potential investors in Mexico, Taiwan, Vietnam and other countries, and has victimized dozens of investors. According to Plaintiffs, the scheme used the postal service, email, telephone, and wire transmissions to communicate with investors and transfer money from the investors to Defendants.

Plaintiffs assert that Martinez worked with many Defendants and non-parties to "help investors set up bank accounts and incorporate a limited liability company with which to 'run' and 'operate' their RhinoPro business." *Id.* at 9. The scheme allegedly required investors to sign two contracts, one with non-party Uberwurx, LLC ("Uberwurx") and one with non-party Mobile Coating Management, LLC ("MCM"). The contracts purportedly required the payment of

2

an amount for a license, not a franchise as initially represented, to use RhinoPro products and granted the right to use certain associated trademarks and tradenames. Each investor was to receive a RhinoPro Mobile van fully equipped to spray bedliners into trucks. Rhino Linings manufactured and sold the liquid liner.

Plaintiffs maintain that Martinez and others convinced Crosswell to form LA Trade for the purpose of investing in three RhinoPro Mobile vans. On March 19, 2019, Hernandez informed Crosswell that he should sign his RhinoPro contract to take advantage of the 11% annual returns offered from the investment. On May 6, 2019, Crosswell and LA Trade signed the Uberwurx License Agreement. Crosswell alleges that, per the License Agreement, he paid Uberwurx $25,000 on April 4, 2019; $150,000 on May 7, 2019; and $350,000 on July 19, 2019. In total, Crosswell paid Uberwurx $525,000. Also on July 19, 2019, Crosswell signed the MCM Management and Administrative Services Agreement.

Plaintiffs also contend that Martinez and non-party Frontier Immigration convinced Wang to form Green Wisdom for the purpose of investing in three RhinoPro Mobile vans for a total of $530,000. She also signed a Management and Administrative Services Agreement, which "effectively turned total control of Wang's RhinoPro Mobile business over to MCM." *Id.* at 12.

According to the Complaint, Martinez did not disclose to investors that MCM and its employees would manage the RhinoPro vans and the investors would not be involved. Under this arrangement, RhinoPro franchises were rarely, if ever, profitable as their returns were capped. Plaintiffs have not made 11% returns on their investment. Plaintiffs allege that both Martinez and Hernandez are under indictment for their actions in this scheme.

In their Complaint, Plaintiffs advance claims for (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against all Defendants; (2) breach of contract against M&D; (3) common law fraud and fraud in the inducement against Martinez, Hernandez, RPC, RPT Outfitters, Miranda, M&D, and Gleason-Altieri; (4) violation of the Texas

Deceptive Trade Practices Act ("DTPA") against Martinez, Hernandez, RPC, RPT Outfitters, Miranda, and M&D; (5) legal malpractice against Gleason-Altieri; (6) fraudulent transfer against Martinez; and (7) civil conspiracy.[2]

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (quotations omitted). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In deciding a motion to dismiss under Rule 12(b)(6), I must construe the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts as true." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation omitted). At the same time, I am not required to "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

When alleging fraud or mistake, Rule 9(b) requires that a party "state with

---

[2] Plaintiffs also assert an alter ego claim; however, that is not a standalone cause of action. *See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842, 2012 WL 3100778, at *16 (N.D. Tex. July 31, 2012) ("Alter ego is not a claim or independent cause of action—it is a remedy to enforce a claimed substantive right.").

particularity the circumstances constituting fraud or mistake." This requirement has long played a screening function, standing as "'a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later.'" *Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092, 1116 (S.D. Tex. 2020) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)).

It is important to keep in mind that a Rule 12(b)(6) dismissal is the exception rather than the rule. As the Fifth Circuit has lectured repeatedly, Rule 12(b)(6) motions to dismiss are "'viewed with disfavor and [are] rarely granted.'" *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)).

## ANALYSIS

Defendants ask me to dismiss Plaintiffs' claims for violations of RICO, common law fraud, fraudulent inducement, violations of the DTPA, fraudulent transfer, and civil conspiracy. I will address each cause of action individually.

### A. Plaintiffs Fail to State a RICO Claim

Defendants argue that Plaintiffs fail to state a claim under RICO. More specifically, Defendants claim that Plaintiffs fail to plead (1) the necessary predicate acts and pattern of racketeering activity; (2) reliance in connection with Plaintiffs' mail and wire fraud claims; (3) a cognizable RICO enterprise; and (4) conspiracy under 18 U.S.C. § 1962(d). Plaintiffs respond that they have sufficiently pleaded their RICO claims to survive Defendants' motions to dismiss.[3] I need only to address Defendants' third argument—Plaintiffs' failure to sufficiently plead a cognizable RICO enterprise.

"Congress enacted RICO in order to prohibit conduct involving a pattern of racketeering activity." *Alvarez v. Rosas*, No. H-18-4646, 2020 WL 2061491, at *4 (S.D. Tex. April 29, 2020). "One of RICO's enforcement mechanisms is a private

---

[3] Defendants also seek dismissal of Plaintiffs' RICO conspiracy claim. Plaintiffs oppose dismissal of a RICO conspiracy claim. Based on a review of Plaintiffs' Complaint, however, Plaintiffs have not pleaded a RICO conspiracy claim.

right of action, available to '[a]ny person injured in his business or property by reason of a violation' of the RICO's substantive restrictions." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) (quoting 18 U.S.C. § 1964(c)). To state a civil RICO claim, "a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Arruda v. Curves Int'l, Inc.*, No. 6:20-CV-00092, 2020 WL 4289380, at *3 (W.D. Tex. July 27, 2020), *aff'd*, 861 F. App'x 831 (5th Cir. 2021). Simply stated, a plaintiff seeking to properly plead a civil RICO claim must allege that an enterprise exists. *See Alufase USA LLC v. Palma*, No. CV H-16-77, 2016 WL 3911127, at *4 (S.D. Tex. May 6, 2016).

An enterprise is defined as "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). Although Plaintiffs do not identify what type of enterprise Defendants engaged in, Plaintiffs argue in their briefing that they allege the existence of an association-in-fact enterprise. "An association-in-fact enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (quotation omitted).

Plaintiffs allege that "Defendants Martinez, Hernandez, Miranda, Gleason-Altieri, . . . RhinoPro Ceramic, RhinoPro Truck Outfitters, and M&D Corporate Solutions, along with non-defendants Uberwurx, Frontier Immigration, and MCM, conducted an enterprise aimed at obtaining fraudulent visas for purposes of eventually obtaining citizenship." Dkt. 1 at 17–18. Plaintiffs also contend that they have sufficiently alleged the enterprise had the purpose of "steal[ing] money from foreign investors by pitching fraudulent franchises as investment opportunities." Dkt. 23 at 15. No other purpose, feature, or function of the enterprise is alleged. "This is obviously not sufficient to plead the existence of an enterprise 'separate and apart from the pattern of racketeering activity in which it engages.'" *Zastrow*

*v. Houston Auto Imps. Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015) (quoting *Whelan*, 319 F.3d at 229) (dismissing RICO claim where plaintiff alleged that defendants formed the enterprise specifically to commit the very criminal acts at issue in the complaint—nothing beyond that).

Plaintiffs do not dispute their failure to allege that the purported enterprise had any existence separate and apart from the racketeering activity. *See* Dkt. 23 at 14–15. Instead, Plaintiffs contend that such allegations are not required because "evidence of racketeering activity may be sufficient to infer the existence of an association-in-fact enterprise." *Id.* at 14 (citing *Boyle v. United States*, 556 U.S. 938, 940 (2009)). *Boyle* is inapplicable here. In *Boyle*, the Supreme Court addressed what evidence was sufficient to sustain a *criminal* RICO conviction, not what must be pleaded in a civil case. *See Boyle*, 556 U.S. at 942. In civil cases, Fifth Circuit precedent requires that a cognizable RICO enterprise "must exist for purposes other than just to commit predicate acts." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019). Recently, the Fifth Circuit reiterated this requirement in affirming a district court's dismissal of a RICO claim, finding that the "allegations fail[ed] to state the existence of an enterprise that is 'an entity separate and apart from the pattern of [racketeering] activity in which it engages,' and as such, fails to state a claim under RICO." *Guardino v. Hart*, No. 22-20278, 2023 WL 3818378, at *5 (5th Cir. June 5, 2023) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). The same result is required here. This requirement is consistent with Congress's intention to "prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (quotation omitted).

Accordingly, Plaintiffs' RICO claim should be dismissed because Plaintiffs have failed to plead a cognizable RICO enterprise.

**B.  Plaintiffs Fail to State a Claim for Common Law Fraud or Fraudulent Inducement**

In Texas, the elements of fraud are:

7

> (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). "To state a claim under Texas law for fraudulent inducement, a plaintiff must allege all of the elements of fraud as well as an underlying contract which was induced." *Stanissis v. Dyncorp Int'l LLC*, No. 3:14-CV-2736, 2016 WL 4159397, at *5 (N.D. Tex. Aug. 5, 2016) (quotation omitted). Claims of fraud must comport with Rule 9(b)'s particularity requirement. *See Sanderson v. Allstate Fire & Cas. Ins. Co.*, No. CV H-22-3536, 2023 WL 417478, at *2 (S.D. Tex. Jan. 25, 2023).

Plaintiffs allege that Martinez, Hernandez, RPC, and RPT Outfitters made false representations to Plaintiffs that their investment would (1) purchase three RhinoPro Mobile franchises, truck accessories stores, and fully equipped vans; and (2) yield a guaranteed return of 11%. These allegations fail to meet the pleading requirements of Rule 9(b) as required for both Plaintiffs' common law fraud and fraudulent inducement claims.

To start, Plaintiffs' allegation regarding the representation that their investment would purchase RhinoPro Mobile franchises, truck accessories stores, and fully equipped vans is wholly general and lacks the particularity required under Rule 9(b). Plaintiffs do not allege when, where, how, or by whom this representation was made. *See Sanderson*, 2023 WL 417478, at *2 (dismissing claim where the "'who, what, when, and where' required by Rule 9(b) is missing"). Further, Plaintiffs do not offer any explanation for how this representation was false when made. *See Shandong*, 607 F.3d at 1033 (dismissing fraud claim for failing to sufficiently allege that a statement was false when made). In fact, it is not

8

clear from Plaintiffs' Complaint whether the statement was false, as Plaintiffs do not allege that Defendants failed to deliver to Plaintiffs. Instead, Plaintiffs offer only the conclusory allegation that "although Defendants contracted to provide each investor with their own van and their own territory, this did not often occur." Dkt. 1 at 16. Therefore, it is not clear what, if anything, Plaintiffs received in exchange for their investment.

Plaintiffs' allegation of fraud regarding a representation of a guaranteed 11% rate of return on their investment is also deficient. First, Plaintiffs do not plead facts supporting that Hernandez knew her statement was false, or that she made the representation recklessly and without knowledge of its truth. *See Shandong*, 607 F.3d 1032–33. The allegations further fail to satisfy Rule 9(b) because they do not contain any explanation as to why Hernandez's statement was fraudulent. *See Wesolek v. Pac. Hunt Energy Corp.*, No. CV H-20-2537, 2021 WL 3775635, at *4 (S.D. Tex. Aug. 10, 2021). Plaintiffs' allegations that "[t]his investor scheme yielded RhinoPro franchises that were rarely, if ever, profitable" and "payments to investors, when and if they were made, were often funded through new investment fees—a classic pyramid scheme" do not cure this deficiency. Dkt. 1 at 16. That Plaintiffs ultimately did not receive what was promised is not sufficient for an inference of fraud. To allow such a "logical leap would transform every breach of contract case into a fraud claim." *Wesolek*, 2021 WL 3775635, at *5.

Separately, Plaintiffs allege that Miranda, Gleason-Altieri, and M&D made representations to induce Crosswell and LA Trade "into retaining them to form LA Trade Supplies and prepare Crosswell's E2 and EB5 visa applications." Dkt. 1 at 20. As far as specifics, all Plaintiffs say is that Miranda, Gleason-Altieri, and M&D "represented to Crosswell and LA Trade . . . that the visa applications would be completed pursuant to, and comply with, U.S. immigration laws. They also made other representations. The representations were material. The representations were also false." *Id*. These allegations come nowhere close to satisfying Rule 9(b)'s heightened pleading standard. Rule 9(b) requires that a complaint detail "the who,

9

what, when, and where before access to the discovery process is granted." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (cleaned up). The Fifth Circuit has mandated that Rule 9(b)'s heightened-pleading standard be applied with "bite" and "without apology." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). Although Rule 9(b) demands specificity as to the exact misrepresentations at issue, Plaintiffs fail to inform the Court—or Defendants—as to what the exact misrepresentations were, when they occurred, or who made them. The vague and generalized allegations of fraud contained in the Complaint fall well short of Rule 9(b)'s pleading requirements. *See Williams*, 112 F.3d at 179 ("These vague pleadings illustrate the practical basis for the requirement that a plaintiff point to specific statements made by the defendants."); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (By failing to identify "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," a fraud claim fails to meet Rule 9(b) (quotation omitted)).

Accordingly, Plaintiffs' claims for common law fraud and fraudulent inducement should be dismissed.[4]

## C.   Plaintiffs Fail to Plead a Violation of the DTPA

To state a claim under the DTPA, a plaintiff must show: "(1) the plaintiff is a consumer; (2) the defendant can be sued under the DTPA; (3) the defendant violated a specific provision of the DTPA; and (4) the defendant's violation is a

---

[4] Independently, the fraud and fraudulent inducement claims must be dismissed because Plaintiffs have failed to sufficiently allege justifiable reliance. The United States Supreme Court has held that a fraud plaintiff "cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field v. Mans*, 516 U.S. 59, 71 (1995) (quotation omitted). In this case, Plaintiffs readily admit that the Management and Administrative Services Agreement they signed expressly limits their return to less than 11%. To allow Plaintiffs to continue with a fraud claim when they were fully aware of facts that made the alleged representation false would render the "justifiable reliance" element of a fraud claim meaningless. I am unwilling to go there. *See W & L Ventures, Inc. v. E. W. Bank*, No. H-13-00754, 2014 WL 1248157, at *9 (S.D. Tex. Mar. 26, 2014) (dismissing fraud claim on a motion to dismiss for failure to plead justifiable reliance).

producing cause of plaintiff's damages." *Henry v. CitiMortgage, Inc.*, No. 4:11-CV-83, 2011 WL 2261166, at *6 (E.D. Tex. May 10, 2011) (citing TEX. BUS. & COM. CODE ANN. §§ 17.41–17.63). In federal court, claims under the DTPA are "subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F. Supp. 3d 944, 951 (S.D. Tex. 2016).

Plaintiffs claim that Martinez, Hernandez, RPC, and RPT Outfitters violated the DTPA by representing that Plaintiffs' investment would yield an 11% return and that Plaintiffs would receive franchises, truck accessories stores, and fully equipped vans. *See* Dkt. 1 at 21. According to the Complaint, these representations violated § 17.46(b)(5), (7), and (9) of the DTPA.[5]

Yet, Plaintiffs' DTPA claims fail to meet the heightened pleading requirements of Rule 9(b). As discussed above, Plaintiffs' allegations regarding the representation that their investment would purchase RhinoPro Mobile franchises, truck accessories stores, and fully equipped vans are not made with particularity. Plaintiffs fail to specify who made the false statements, when they were made, or what form they took. *See Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 479 (E.D. Tex. 2021) (dismissing DTPA claims where plaintiff failed to "identify the name of the speaker, identify when the statement was made, and identify where it was made in all but one his statements"). "To reach the requisite level of particularity,

---

[5] Defendants argue that Plaintiffs are not consumers under the DTPA. Under the DTPA, a consumer is defined as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE § 17.45(4). According to Defendants, Plaintiffs' investment and agreements were for licensing agreements and management services and therefore, Plaintiffs are not consumers because their DTPA claim does not concern goods or services. As a starting point, Plaintiffs' agreement with MCM for management services is clearly an agreement for the provision of *services*. But regardless, as pled, Plaintiffs' primary objective in entering into an agreement with Defendants was to acquire a "RhinoPro Mobile franchise." Dkt. 1 at 21. Texas courts have repeatedly held that a party seeking to acquire a franchise is a consumer under the DTPA. *See, e.g., In re Carroll*, 464 B.R. 293, 325 (Bankr. N.D. Tex. 2011) (citing *Tex. Cookie Co. v. Hendricks & Peralta*, 747 S.W.2d 873, 876–77 (Tex. App.-Corpus Christi 1988, writ denied)), *aff'd sub nom. Carroll v. Farooqi*, 486 B.R. 718 (N.D. Tex. 2013). Further, the acquisition of a RhinoPro Mobile Franchise included "truck accessories store and a fully equipped van." Dkt. 1 at 21. Therefore, Plaintiffs are consumers under the DTPA.

Plaintiff[s] needed to name the individuals who made false representations to [them], and recount specific statements that were false representations." *Ardoin v. Stryker Corp.*, No. 4:18-CV-2192, 2019 WL 4933600, at *6 (S.D. Tex. Oct. 7, 2019). Plaintiffs have not done so.

Plaintiffs' allegations regarding Hernandez's representation of the investment's rate of return also fail to satisfy Rule 9(b). Plaintiffs do not "plead *how* [the] alleged statement[] made by [Ms. Hernandez was] false or misleading." *Franklin*, 569 F. Supp. 3d at 479 (dismissing DTPA claims on this basis); *Barnett v. Forest River, Inc.*, No. 9:17-CV-99, 2017 WL 7733052, at *3 (E.D. Tex. Nov. 29, 2017) (dismissing DTPA claim because plaintiff failed to "explain why [the representation] was false, misleading, or deceptive").

### D. Plaintiffs Fail to State a Claim for Fraudulent Transfer

To prevail on a Texas Uniform Fraudulent Transfer Act ("TUFTA") claim, a plaintiff must prove that (1) she is a "creditor" with a claim against a "debtor"; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. *See Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204 (2014); TEX. BUS. & COM. CODE § 24.005(a)(1)).

Plaintiffs assert two separate claims under the TUFTA. They allege that Martinez violated § 24.005(a)(1) by transferring money or property "for the purpose of hindering, delaying, or defrauding Plaintiff creditors." *See* Dkt. 1 at 23. Claims under § 24.005(a)(1) for actual fraudulent transfer must satisfy Rule 9(b) because "an essential element of an actual fraudulent transfer claim . . . is a fraudulent state of mind." *Campbell v. Tex. Tea Reclamation, LLC*, No. 3:20-CV-00090, 2021 WL 2211690, at *5 (S.D. Tex. May 6, 2021). Alternatively, Plaintiffs allege that Martinez transferred money or property

> without receiving equivalent value in exchange for the transfer, and was engaged or was about t[o] be engaged in a transaction for which his remaining assets were unreasonabl[y] small in relation to the transaction, or intended to incur, or believed or reasonably should

12

>have believed, that he would incur debt beyond his ability to pay as the debt became due . . . [or] without receiving reasonably equivalent value in exchange for the transfer and he was insolvent at the time of the transfer or became insolvent because of the transfer.

Dkt. 1 at 23–24. Such "constructive fraudulent transfer claims are not subject to Rule 9(b)'s heightened pleading standard because constructive fraudulent transfer focuses on the debtor's financial condition and the sufficiency of the consideration, not an actual intent to defraud." *Campbell*, 2021 WL 2211690, at *6 (quotation omitted). But regardless of whether evaluated under Rule 9(b) or Rule 8, Plaintiffs fail to state a claim under TUFTA.

Under Rule 9(b), Plaintiffs' Complaint, at a minimum, fails to supply the what and when of the fraudulent transfer. The Complaint does not contain any factual allegations regarding the amount of money or identify any property that was allegedly transferred. *See Campbell*, 2021 WL 2211690, at *6 (dismissing claim for failing to identify what was transferred). Plaintiffs also do not allege when such an alleged transfer took place. *See id.* (dismissing claim for failing to identify when the transfer took place).

Similarly, Plaintiffs' constructive fraudulent transfer claims do not provide Defendants the notice required under Rule 8. To satisfy Rule 8, Plaintiffs must plead specific facts in support of their claim—not bare, unsupported allegations. *See U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not establish facial plausibility." (cleaned up)). Here, Plaintiffs simply allege the elements of the cause of action without offering any specific facts. *See Twombly*, 550 U.S. at 555 ("A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (cleaned up)). Because Plaintiffs fail to offer factual allegations supporting their conclusory assertion that Martinez violated TUFTA, their constructive fraudulent transfer claims under §§ 24.005(a)(2) and 24.006(a) fail and should be dismissed.

### E.     Plaintiffs Fail to State a Claim for Civil Conspiracy

"In Texas, a civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). The essential elements of a civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Civil conspiracy is a "derivative tort," meaning it depends on some underlying tort or other illegal act. *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019) ("Our use of the word 'derivative' in this context means a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it."). Because Plaintiffs have not met their burden on any of their underlying claims, their conspiracy claim also fails.

### F.     Plaintiffs' Claims Against the Remaining Defendants Should Also Be Dismissed

For all the reasons stated above, I recommend that Plaintiffs' claims against the remaining defendants—Rhino Linings, Hernandez, RPT Outfitters, M&D, and Gleason-Altieri—also be dismissed. "As a general rule, even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties." *Century Sur. Co. v. Blevins*, 799 F.3d 366, 372 (5th Cir. 2015) (quotation omitted). Fairness requires notice and the opportunity to be heard. *See id*. This report is such notice. Plaintiffs' objections to this report, if any, are their opportunity to be heard.

Plaintiffs' claims against the unserved defendants—Hernandez, RPT Outfitters, M&D, and Gleason-Altieri—should dismissed for an additional reason. The time for effectuating service passed more than a year ago. *See* FED. R. CIV. P. 4(m) (requiring that a defendant be "served within 90 days after the complaint is

filed" or risk dismissal). Absent Plaintiffs' showing of "good cause for the failure" to serve Hernandez, RPT Outfitters, M&D, and Gleason-Altieri, the court should dismiss Plaintiffs' claims against these defendants "without prejudice." *Id.*

### G.   **Plaintiffs' Request to Amend**

Plaintiffs cursorily request the opportunity to amend their complaint. Although leave to amend pleadings should be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), leave to amend is by no means automatic. *See Avatar Expl., Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). As the Fifth Circuit has explained on numerous occasions, the ultimate decision to grant or deny a motion to amend rests within the sound discretion of the trial judge. *See id.* When exercising its discretion to allow or deny leave to amend, the district court can consider a number of factors, such as "the futility of amending, the party's repeated failure to cure deficiencies by previous amendments, undue delay, or bad faith." *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 392 (5th Cir. 2008). While the language of Rule 15(a)(2) evinces a bias in favor of granting leave to amend, "a district court need not grant a futile motion to amend." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016).

Plaintiffs provide absolutely no basis or detail for the requested amendment. In an ideal world, Plaintiffs would have provided me a proposed amended complaint to review. Nonetheless, their "failure to attach a copy of the proposed complaint is not, on its own, fatal to a motion to amend." *Peña v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018). What does, however, doom Plaintiffs' request to amend is their failure to apprise me of what additional facts they would include in an Amended Complaint. "[A] bare bones motion to amend remains futile when it fails to apprise the district court of the facts that [plaintiffs] would plead in an amended complaint." *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (quotation omitted). Because Plaintiffs have failed to explain what facts would be included in an amended pleading, their request to amend should be denied. *See Rombough v. Bailey*, 733 F. App'x 160, 165 (5th Cir. 2018) ("[Plaintiff]

15

failed to apprise the court of the facts she would plead in her amended complaint; therefore the district court did not err when it denied her motion to amend as futile"). Remember, I already gave Plaintiffs an opportunity to amend their Complaint, and they declined that opportunity. *See* Dkt. 18 (giving the parties until November 1, 2022 to amend their pleadings). At a certain point, enough is enough. *See Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002) (holding that plaintiffs need not be afforded a chance to amend their complaint where they had already been given an opportunity to amend). That time is now. Plaintiff's request to amend their complaint is denied.

## CONCLUSION

For the reasons set forth above, I recommend that the motions to dismiss filed by Rhinopro Ceramics, LLC; Mara 6 Holdings, LLC; Mara 6 Investments, LLC; Juan Carlos Martinez Cecias Rodriguez; Comar Holdings, LLC; and Cecilia Miranda (*see* Dkts. 19-21, 26) be **GRANTED** and those defendants be dismissed from this lawsuit. I also recommend that the Court sua sponte dismiss Plaintiffs' claims against Rhino Linings, Hernandez, RPT Outfitters, M&D, and Gleason-Altieri for failure to state a claim and additionally, with respect to the latter four of those defendants, failure to effectuate service in the required 90 days.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 8th day of September 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE