United States Courts
Southern District of Texas
FILED
November 08, 2024
Nathan Ochsner, Clerk of Court

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 17, 2024
Lyle W. Cayce
Clerk

No. 23-20535

___

Jorge Crosswell; Gloria Wang; LA Trade Supplies, L.L.C.; Green Wisdom Industry, L.L.C.,

*Plaintiffs—Appellants,*

*versus*

Juan Carlos Martinez Cecias Rodriguez; Karina Hernandez; Cecilia Miranda; RhinoPro Ceramic, L.L.C.; RhinoPro Truck Outfitters, Incorporated; M&D Corporate Solutions, L.L.C.; Comar Holdings, L.L.C.; Mara 6 Holdings, L.L.C.; Mara 6 Investments, L.L.C.; Rhino Linings Corporation; Jennifer Anne Gleason-Altieri,

*Defendants—Appellees.*

___

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-1105

___

Before Smith, Clement, and Higginson, *Circuit Judges.*

Stephen A. Higginson, *Circuit Judge*:

In the proceedings below, the plaintiffs alleged that the defendants marketed fraudulent "franchise" opportunities to foreign nationals seeking to invest in the United States to obtain residency visas. The complaint laid

No. 23-20535

out claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), along with state-law claims sounding in fraud, breach of contract, and malpractice. The district court dismissed for failure to state a cognizable enterprise as required by the RICO statute and, as to the state-law claims at issue here, for failure to state a claim under the heightened pleading standards for fraud imposed by FED. R. CIV. P. 9, denying the plaintiffs leave to amend the complaint. We AFFIRM.

I.

A.

Defendant-Appellee Rhino Linings Corporation makes liquid ceramic bedliners for trucks and trailers.[1] RhinoPro Mobile vans have equipment for spraying the liners on. The complaint alleges that Defendant-Appellee Juan Carlos Martinez Cecias Rodriguez ("Martinez") and others marketed RhinoPro Mobile franchises as opportunities to qualify for E-2 or EB-5 visas by investing in the United States. But according to the complaint, investors received only licenses rather than the franchises that had been represented to them, which failed to make them eligible for the visas. Two of these investors were Plaintiffs-Appellants Jorge Crosswell and Gloria Wang, who through their respective limited liability companies Plaintiffs-Appellants LA Trade Supplies, L.L.C., and Green Wisdom Industry, L.L.C., executed contracts for these licenses.

The complaint alleges a variety of other false representations supporting the scheme. Brochures falsely stated that investors would receive 100% of profits. Defendant-Appellee Karina Hernandez represented to Crosswell that the franchises had an 11% return on investment, in

---

[1] We describe the facts as alleged in the complaint because of the case's posture. *See Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020).

contradiction of the contract's express terms. The management agreements "turned total control" over to another (nonparty) company, which received all profits above a limited threshold. Wang and Crosswell did not receive all of the payments they were entitled to; Crosswell's business did not even receive vans or supplies. The limited income from the licenses and restricted participation in management meant that the investors did not qualify for visas despite marketing that the investment was "one hundred percent effective at receiving E2 and EB5 visa approval." Failure to disclose the management arrangement during the visa application process subjected Crosswell to visa revocation.

It is alleged that these sharp dealings were part of a coordinated scheme. The complaint says that Martinez worked with Hernandez, Defendant-Appellee Cecilia Miranda, Defendant-Appellee Jennifer Anne Gleason-Altieri, Defendant-Appellee M&D Corporate Solutions, L.L.C. ("M&D"), and nonparties to market RhinoPro Mobile licenses and to help investors set up bank accounts and incorporate entities to run their businesses, and that Rhino Linings knowingly acquiesced. "Martinez carried out his part of the scheme through at least five companies" that included Defendants-Appellees RhinoPro Ceramic, L.L.C. ("RPC"), and RhinoPro Truck Outfitters, Inc. ("RPT"). With respect to the visa fraud, "Martinez and Hernandez coordinated with Defendants Miranda, Gleason-Altieri, and M&D Corporate Solutions to prepare and file all necessary paperwork" for Mexican investors. In sum, "Defendant Hernandez . . . located suitable victims, Defendants Martinez, RPC, and RPT Outfitters and non-defendant Uberwurx sold them fraudulent RhinoPro franchises, Defendant Martinez and non-defendant MCM sold them fraudulent management services," and "Defendants Miranda, Gleason-Altieri, and M&D Corporate Solutions prepared fraudulent business plans and visa paperwork . . . ."

B.

Crosswell and Wang, and their companies, sued Martinez, Hernandez, Miranda, Gleason-Altieri, RPC, RPT, M&D, and Rhino Linings. The plaintiffs sought to recover their losses under RICO on the basis of the coordinated visa fraud. The plaintiffs further asserted common-law fraud and fraud in the inducement claims under Texas law, and deceptive trade practices under the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ANN. §§ 17.41–.63, on the basis of the false representations by Martinez, Hernandez, RPC, and RPT concerning the Rhino Linings business and the false representations by Miranda, Gleason-Altieri, and M&D about the visa applications. Fraudulent transfers under the Texas Uniform Fraudulent Transfer Act, *id.* §§ 24.001–.013, were alleged between Martinez and RPC, RPT, and Defendants-Appellees Comar Holdings, L.L.C., Mara 6 Holdings, L.L.C., and Mara 6 Investments, L.L.C. The plaintiffs additionally asserted a civil conspiracy claim. Other claims were asserted that are not at issue in this appeal.

The complaint was filed April 6, 2022. A docket control order was entered on September 12, 2022, allowing amendment of pleadings without leave by November 1, 2022. Motions to dismiss were filed by some of the defendants on September 13, 2022, and October 7, 2022. In responsive briefing beginning on October 4, 2022, the plaintiffs requested leave to amend the complaint. Following a joint motion to amend the docket control order, the order was vacated May 31, 2023.

The magistrate judge's report and recommendation was filed September 8, 2023, and proposed to dismiss the case for failure to state a claim, and as to certain of the defendants for failure of service. The report also recommended denying leave to amend the complaint. The plaintiffs filed objections to the report on September 22, 2023, again asking for leave to

4

amend the complaint and attaching a proposed amended complaint. The district court adopted the magistrate judge's report in relevant part and rejected the plaintiffs' request for leave to amend. Judgment issued September 25, 2023. Notice of appeal was given October 25, 2023.

II.

This court reviews a dismissal under Rule 12(b)(6) de novo. *Heinze*, 971 F.3d at 479. "We 'accept all well-pleaded facts as true[']" but not "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)). The complaint is construed "[']in the light most favorable to the plaintiff.'" *Id.* (quoting *Great Lakes Dredge & Dock Co.*, 624 F.3d at 210). "To withstand a motion to dismiss, a complaint must allege 'more than labels and conclusions,' as 'a formulaic recitation of the elements of a cause of action will not do.' It must state a 'plausible claim for relief,' rather than facts 'merely consistent with' liability." *Id.* (citation omitted) (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

The Federal Rules require "circumstances constituting fraud" to be pleaded "with particularity." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.' Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (citation omitted) (quoting 5 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1297 (1990)).

5

This court reviews the denial of a motion for leave to amend a complaint for abuse of discretion. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). While a district court's discretion is cabined under Rule 15(a) "unless there is a substantial reason" for denying leave to amend, *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981), under Rule 16(b) deadlines for amendment in a scheduling order may be modified only upon a "demonstration of good cause." *See S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535–36 (5th Cir. 2003).

Finally, "[w]e review a dismissal for failure to effect timely service of process for an abuse of discretion." *Lindsey v. U.S. R.R. Ret. Bd.*, 101 F.3d 444, 445 (5th Cir. 1996).

### III.

#### A.

Turning first to the RICO claim, we note at the outset some lack of clarity about the proper standard for our review within the parameters just outlined. We have been directed to out-of-circuit authority holding that "in cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52 (1997). This court has stated that a RICO plaintiff "must plead specific facts, not mere conclusory allegations, which establish the enterprise." *Montesano v. Seafirst Com. Corp.*, 818 F.2d 423, 427 (5th Cir. 1987). And that the "plaintiff must plead the specified facts as to each defendant. It cannot . . . 'lump[] together the defendants.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019) (quoting *In re MasterCard Int'l Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 476 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002)).

We need not decide whether such statements establish a special elevated standard for pleading RICO claims or merely caution that, in a field with complex theories of liability, plaintiffs must nonetheless follow the ordinary rules of pleading. *See D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) ("The heightened pleading requirements of Rule 9(b) 'appl[y] only to claims of fraud or mistake.' . . . [F]or other elements of a RICO claim—such as non-fraud predicate acts or, as relevant here, the existence of an 'enterprise'—a plaintiff's complaint need satisfy only the 'short and plain statement' standard of Rule 8(a)." (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992))); *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002) ("Defendants confuse the requirement to plead with particularity RICO acts predicated upon fraud pursuant to Rule 9(b) with Rule 8's more general notice pleading typically required of all litigants."). At the very least, these statements provide a reminder that a claim for relief may not be stood up on conclusory allegations, and since the complaint fails to state a RICO claim under Rule 8 it would fail under a stricter standard too.

The merits issue involves the "enterprise" element of RICO claims. "Regardless of subsection, RICO claims under § 1962 have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)). "RICO does not require [that] an enterprise be a separate business-like entity. Instead, an association-in-fact enterprise includes 'a group of persons associated together for a common purpose of engaging in a course of conduct,' and that enterprise can be proved with 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Allstate Ins. Co. v. Plambeck*, 802

F.3d 665, 673 (5th Cir. 2015) (citation omitted) (quoting *Boyle v. United States*, 556 U.S. 938, 944–45 (2009)).

The district court adopted the determination in the magistrate judge's report that the plaintiffs had not pleaded a cognizable RICO enterprise because the complaint "fail[ed] to allege that the purported enterprise had any existence separate and apart from the racketeering activity," as required to plead an association-in-fact. The court explained that "a cognizable RICO enterprise 'must exist for purposes other than just to commit predicate acts.'" *See Walker*, 938 F.3d at 738. Since the complaint alleged only the purpose of "steal[ing] money from foreign investors by pitching fraudulent franchises as investment opportunities," no such separate purpose had been pleaded. The appellants contend that they adequately pleaded an association-in-fact enterprise,[2] urging that the complaint alleged that "multiple persons . . . joined together to engage in mail, wire, and immigration fraud. . . . The Complaint identified each defendant and described their overall role in the scheme."

We agree that the plaintiffs failed to plead a RICO enterprise but do not quite agree with the district court's reasoning. Although a RICO enterprise "must be more than a summation of predicate acts," *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 748 (5th Cir. 1989), that does not mean that predicate acts cannot demonstrate the existence of an enterprise. On the contrary, "the evidence establishing the enterprise and

---

[2] To the extent that the appellants further argue that RPC, RPT, or nonparty Uberwurx provided a "legal entity" enterprise, their contentions on appeal do not provide sufficient explanation to allow assessment of this theory. *Cf. St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 447 n.16 (5th Cir. 2000) ("[A] '§ 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation.'" (quoting *Brittingham v. Mobil Corp.*, 943 F.2d 297, 301 (3d Cir. 1991))).

the pattern of racketeering may 'coalesce.'" *Allstate*, 802 F.3d at 673 (quoting *Boyle*, 556 U.S. at 947). The rule that an association-in-fact "must exist for purposes other than just to commit predicate acts," *Walker*, 938 F.3d at 738, requires the association-in-fact to have *continuity*—in other words, a group that commits an isolated set of acts need not thereby "function as a continuing unit and remain in existence long enough to pursue a course of conduct." *Boyle*, 556 U.S. at 948; *see Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) ("Plaintiff has failed to assert continuity—that the association existed for any purpose other than to commit the predicate offenses."); *Montesano*, 818 F.2d at 427 (similar). It does not mean that a plaintiff must plead that a common venture dedicated to racketeering activity exists to further other nonculpable ends too. *Allstate*, 802 F.3d at 674; *see Boyle*, 556 U.S. at 948 ("[A] group that does nothing but engage in extortion ... may fall squarely within the statute's reach."); *Russello v. United States*, 464 U.S. 16, 24 (1983) ("[T]he term 'enterprise' in § 1961(4) encompasses both legal entities and *illegitimate* associations-in-fact." (emphasis added)); *United States v. Turkette*, 452 U.S. 576, 582 n.4 (1981) ("[S]ince legitimacy of purpose is not a universal characteristic of the specifically listed enterprises [in § 1961(4)], it would be improper to engraft this characteristic upon [association-in-fact] enterprises.").

Instead, to determine whether the plaintiffs pleaded an association of sufficient continuity to constitute an enterprise, we turn to the Supreme Court's decision in *Boyle v. United States*.[3] *Boyle* reiterated that an

---

[3] At this point we part ways from the district court's conclusion that *Boyle* was inapplicable because it concerned jury instructions in a criminal case. The definition of enterprise in *Boyle*, 28 U.S.C. § 1961(4), is the same one at issue here. Although a provision can take on different meanings as it is incorporated into different parts of a statutory scheme, "we presume that the same term has the same meaning." *Env't Def. v. Duke*

association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." 556 U.S. at 945 (quoting *Turkette*, 452 U.S. at 583). The Court identified "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. The Court further stated that "the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct." *Id.* at 948. We take this as our starting point, noting the test for association-in-fact continuity outlined in *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988).[4]

At the level of *allegations*, it seems clear that the plaintiffs did not fail to allege such continuity. The clear import of the pleadings is that each of the defendants played a specific, repeated role in a sustained coordinated scheme to defraud multiple victims. Such allegations are consistent with the existence of an entity with continuing and coherent associational structure.

We agree with the district court's conclusion that the plaintiffs failed to plead a RICO enterprise, however, because these general allegations lack plausible support in the pleaded facts. Instead, the facts pleaded demonstrate a sequence of unfavorable transactions orchestrated by Martinez, at times

---

*Energy Corp.*, 549 U.S. 561, 574–76 (2007). In any case, both *Walker*, 938 F.3d at 738, and *Allstate*, 802 F.3d at 673, have already applied *Boyle* in the civil context.

[4] It bears noting that this court has recently carefully canvassed case law on continuity in the context of RICO's "pattern" requirement. *See D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198, 205–10 (5th Cir. 2024), *cert. denied*, No. 24-18, 2024 WL 4427165 (U.S. Oct. 7, 2024); *see also Boyle*, 556 U.S. at 946 ("Section 1962(c) ... shows that an 'enterprise' must have some longevity, since the offense proscribed by that provision demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'").

No. 23-20535

accompanied by defendant and nonparty corporate entities, and the complaint is bereft of facts that define any structure or organization or other emergent properties of connection among Martinez and these entities.[5] Accusing a group of defendants comprising one natural person and a collection of legal fictions as undertaking a set of acts together, without providing any detail as to *how* they acted together, fails to provide a factual basis from which to plausibly infer the connected structure of an association. *See Boyle*, 556 U.S. at 946. To be sure, the facts pleaded are "consistent with" RICO liability, but these conclusory allegations do not state a plausible claim for relief. *See Twombly*, 550 U.S. at 557.

The pleaded facts do demonstrate specific acts by Hernandez, Miranda, Gleason-Altieri, and M&D—but only as to an isolated set of events directed to Crosswell. No allegations plausibly support the complaint's theory of the enterprise that such transactions were repeated by these defendants with the continuing common purpose of a shared scheme.[6] This is similar to the situation presented (pre-*Boyle*) in *Montesano*, when we concluded that "join[ing] together for the purpose of illegally repossessing the vessel" did not plausibly support the extrapolation that the defendants had formed an enterprise dedicated to like activity. 818 F.2d at 427. While the appropriateness of such extrapolation depends on the circumstances of

---

[5] This includes statements making conclusory allegations about the knowing participation of Rhino Linings or merely describing nonparty management of the businesses.

[6] The only facts pleaded concerning the parallel involvement of Foster LLP, for example, involve the scheduling of a visa interview. The complaint's bare mention of other legal proceedings also lacks sufficient detail. *See D&T Partners*, 98 F.4th at 210. The closest the complaint comes on this front is Hernandez's purported misrepresentations about the content of the license agreement, which generally resemble other alleged misrepresentations by Frontier Immigration, but we think this still fails to make out "a continuing unit" comprising both parties. *Boyle*, 556 U.S. at 948.

each case, here the defendants are not linked to any other continuing set of relationships or a course of activity that would entail an association operating in the background; there is no evidence plausibly indicating that otherwise isolated acts as to Crosswell are examples of reiterated roles.[7] Instead, it is the other way around; we are effectively being asked to assume an association-in-fact in order to infer the premise that these defendants could have been playing repeated roles in continuing association. There are other ways to show an enterprise but as presented on appeal this theory of the complaint's sufficiency lacks plausible support.

B.

With respect to the fraud and fraudulent inducement claims, the district court found that the complaint failed to meet Rule 9(b)'s particularity requirement. Under Texas law, "the elements of fraud must be established" for either type of claim since fraudulent inducement "is a particular species of fraud." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001). Those elements are "(1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury." *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) (quoting *Wilson v. Jones*, 45 S.W.2d 572, 573 (Tex. Comm'n App. 1932)). We assume for the sake of argument that contractual nonperformance may sometimes be

---

[7] These counterfactual examples are meant to illustrate by juxtaposition with the complaint's allegations, not to state requirements. To be clear, "[m]embers of the group need not have fixed roles...." *Boyle*, 556 U.S. at 948.

actionable in Texas as promissory fraud. *See Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971).

The district court additionally found that the allegations under the Texas Deceptive Trade Practices Act failed to meet the standards of Rule 9(b). A claim under the Act requires that: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). The acts at issue under §§ 17.46(b)(5), 17.46(b)(7), and 17.46(b)(9) of the Act generally relate to passing off inferior goods and services and false advertising.[8] The appellants do not challenge the district court's application of Rule 9(b) to the pleading of these deceptive acts.[9]

The appellants identify four alleged misrepresentations to support their fraud and deceptive-practice claims.[10] First, "Hernandez sent an email to Crosswell on March 19, 2019, containing representations about the 11%

---

[8] The "false, misleading, or deceptive acts or practices," TEX. BUS. & COM. CODE ANN. § 17.46(b), covered by § 17.46(b)(5) are "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not," by § 17.46(b)(7), "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and by § 17.46(b)(9), "advertising goods or services with intent not to sell them as advertised."

[9] The appellants cite case law that explains that Rule 9(b) may require less scrutiny of the specifics of the false representation in contexts outside of common-law fraud. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188–89 (5th Cir. 2009). However, the appellants do not elaborate on this point, and it is unclear how their theory of injury for their claims (for example) would suggest a qualified approach.

[10] The appellants additionally note removal of the management agreement from the visa application but do not explain how this could have been fraud as to the appellants or a deceptive practice that injured them. Other misrepresentations that are raised only as RICO predicate acts would fail on similar grounds to those discussed here.

annual return on investment . . . ." We agree with the district court that apart from a "[t]hreadbare recital[]," *Iqbal*, 556 U.S. at 678, the complaint does not allege knowledge of or recklessness concerning this falsity by Hernandez, even considering the license granted by Rule 9(b) to allege such mental states with generality. The complaint notes that Hernandez's representations were "belied by the management contract," but the complaint does not allege even generally that the contract's final contradictory terms were in existence at that point or that Hernandez (who is not alleged to have been involved in the process of executing the contract) was aware of or should otherwise be charged with knowledge of its contents.

Second, "Martinez, Hernandez, and other Defendants represented that Crosswell's investment would purchase three RhinoPro Mobile franchises, truck accessories stores, and fully equipped vans." As the district court pointed out, there is likewise no substantial suggestion in the complaint that such statements were knowingly or recklessly false when made. And apart from provisions in contracts between the plaintiffs and nonparties, the allegations provide insufficient detail about the alleged misrepresentations themselves. The complaint states only for example that "Martinez, Hernandez, Miranda, Uberwurx, RPC, RPT Outfitters, MCM, and M&D Corporate Solutions, convinced Crosswell to ... purchase three fully equipped RhinoPro Mobile vans." We think this lacks sufficient detail at least as to who said what.

Third, "Miranda, Gleason-Altieri, and M&D made representation[s] to induce Crosswell and LA Trade Supplies into retaining them to form LA Trade Supplies and prepare Crosswell's E2 and EB5 visa applications." As with the purported representations concerning the franchises and vans, the district court correctly determined that this allegation had not been adequately pleaded based on the absence of any detail concerning such representations.

Fourth, "Defendants did not disclose to Plaintiffs that they would not be able to directly manage their[ ']franchises.'" On this point, the complaint does not sufficiently identify "the particular circumstances" that "impose[d] a duty . . . to speak." *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).

## C.

The appellants challenge the district court's dismissal of two other sets of claims. The district court found that the allegations for fraudulent transfer "simply allege[d] the elements of the cause of action without offering any specific facts." *See* TEX. BUS. & COM. CODE ANN. §§ 24.005-.006. And, having found no predicate tort claims to have been adequately pleaded, the district court dismissed the civil conspiracy claims as a result. *See Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019) ("[A] civil conspiracy claim is connected to the underlying tort and survives or fails alongside it."). We agree on both points.

## D.

With respect to the denial of leave to amend, the district court did not abuse its discretion in explaining that the plaintiffs did not comply with the deadline in the docket control order for amendment of the complaint. Appellants urge that "leave to amend should be freely granted," but under Rule 16(b), which governs scheduling order deadlines, "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters.*, 315 F.3d at 535 (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (1990)).

No. 23-20535

The scheduling order was entered September 12, 2022, and established a deadline of November 1, 2022, for amendment of pleadings. Appellants press that this provided a timeframe of less than two months and that the order was entered before the motions to dismiss were filed. When the plaintiffs requested leave to amend in October 2022 when responding to the motions to dismiss, however, the only justification they provided was that amendment would enable a decision on the merits. Although this request was reviewed under Rule 15 rather than Rule 16, the court justifiably relied upon the scheduling order (which by that point had been vacated) as imposing a deadline from which the motion for leave to amend was proposing to deviate. *See Cole v. Sandel Med. Indus., L.L.C.*, 413 F. App'x 683, 689 (5th Cir. 2011).

The report further pointed out that the plaintiffs had not tendered any proposed amended complaint with this request, nor apprised the court of any additional facts that would be included by amendment. This court has previously sustained such reasoning. *See, e.g., Edionwe v. Bailey*, 860 F.3d 287, 294–95 (5th Cir. 2017).

In their objections to the report filed September 22, 2023, the plaintiffs attached a proposed amended complaint. This was rejected by the district court on the ground that it did not cure the "undue delay" upon which leave to amend had been denied in the first place. Particularly in light of the distance from the deadline in the scheduling order we cannot say this was an abuse of the district court's discretion. *See Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (describing "undue delay" as a "substantial reason" justifying denial of leave to amend). "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967).

No. 23-20535

E.

The district court did not abuse its discretion in dismissing the claims against RPT and M&D for failure to effect service. *See* Fed. R. Civ. P. 4(m) (requiring dismissal on motion or sua sponte for such failure within 90 days after filing of the complaint unless good cause is shown); *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("Rule 4(m) requires dismissal if a defendant is not served within 90 days after the complaint is filed, unless the plaintiff shows good cause for the failure."). Appellants concede the failure to effect service, stating only that these defendants had "constructive knowledge" from service on Martinez without arguing that any such notice met the requirements of Rule 4.

IV.

The district court's judgment is AFFIRMED.